FILED & ENTERED

OCT 13 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jones    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:12-bk-40267-DS |
| Peter Kvassay, | Chapter: 7 |
| | Adversary No.: 2:12-ap-02577-DS |
| Debtor, | **MEMORANDUM DECISION** |
| Robert Kvassay and the Kvassay Family Trust Dated February 26, 1993 | Trial Date |
| Plaintiff(s), | Date: August 23, 2016-August 24, 2016<br>Time: 10:00 a.m. and 9:00 a.m.<br>Place: Courtroom 1445<br>255 East Temple Street<br>Los Angeles, CA 90012 |
| v. | |
| Peter Kvassay, | |
| Defendant. | |

I.   Procedural Background

Peter Kvassay (the "Defendant") filed a voluntary chapter 7 petition On September 5, 2012. On November 20, 2012, Robert Kvassay[1] and the Kvassay Family Trust Dated February 26, 1993 (the "Trust" and together with Robert Kvassay the "Plainitffs") filed an adversary proceeding against the Defendant seeking nondischargeability of certain debts. The original complaint filed by the Plaintiffs brought claims under 11 U.S.C. § 523(a)(4)(fraud), 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(2)(B), and 11 U.S.C. §

---

[1] Robert Kvassay is the brother of Peter Kvassay.

1  523(a)(6) (Adversary Docket No. 1). The Defendant filed a motion to dismiss in response
2  to the complaint (Adversary Docket No. 7) and the Plaintiffs then filed an amended
3  complaint instead of opposing the motion to dismiss (the "First Amended Complaint,"
4  Adversary Docket No. 9). The First Amended Complaint alleged claims under 11 U.S.C. §
5  523(a)(4)(fraud while acting as a fiduciary and larceny) and 11 U.S.C. § 523(a)(6). The
6  Defendant filed a second motion to dismiss which the Plaintiffs opposed. After a hearing
7  on the second motion to dismiss, the court issued an order partially granting and partially
8  denying the Defendant's second motion to dismiss (Adversary Docket No. 18). In the
9  order, the court dismissed the Plaintiffs' claim for fraud while acting in a fiduciary capacity
10 and held that the Plaintiffs' only remaining claims were under 11 U.S.C. §
11 523(a)(4)(larceny) and 11 U.S.C. § 523(a)(6).
12        Before trial the parties were unable to prepare a joint pre-trial order and both parties
13 submitted separate proposed pre-trail orders. At a pre-trail conference held on August 9,
14 2016, attorneys for the Defendant and the Plaintiffs orally stipulated to the entry of a pre-
15 trial order prepared by the Court after the Court reviewed the two proposed pre-trial orders.
16 The Court issued the pre-trail order on August 19, 2016 (the "Pre-Trial Order," Adversary
17 Docket No. 176). On August 23, 2016, at 10:00 a.m., trial commenced. During opening
18 statements the Plaintiffs' attorney asserted that the Plaintiffs were waiving their claim
19 under11 U.S.C. § 523(a)(6). The Plaintiffs also indicated that the only damages they
20 sought were a $973,520 offset of the Defendant's distributive share of the Trust ordered by
21 the Superior Court of California County of Los Angeles (the "Superior Court").
22    II.    Findings of Fact
23        Prior to the Defendant filing a bankruptcy petition, Robert Kvassay filed probate
24 petitions and a civil matter which were consolidated into a single case for trail by the
25 Superior Court. After trial, the Superior Court made findings of fact and conclusions of law
26 that were affirmed by the Court of Appeal of the State of California Second Appellate
27 District (the "Appellate Court"). No further appeal was taken so the findings of fact and
28 conclusions of law made by the Superior Court and the Appellate Court are final.

In the Superior Court, among other requested relief, Robert Kvassay sought a finding that $1,500,000 in loan proceeds was property of the Trust and also sought to offset the Defendant and Richard Kvassay's[2] shares of the Trust by $1,500,000. (Superior Court Tentative Statement of Decision, Exhibit No. 33, pg. 0351). The Defendant testified that the loan at issue was obtained when Richard Kvassay took him to meet with a representative at Lone Oak Loan Fund LLC. The Defendant testified that he did not negotiate the amount or terms of the loan and only went with Richard Kvassay to Lone Oak Loan Fund LLC because Richard Kvassay told him his signature was necessary to obtain the loan. The Plaintiff testified that he was not aware that the Defendant and Rickard Kvassay obtained a loan from Lone Oak Loan Fund LLC until months after the loan proceeds were distributed.

As noted in the Pre-Trial Order, it is an admitted fact that Robert Kvassay has been the trustee of the Trust since January 12, 2007. (Pre-Trial Order 2:18-21). It is also an admitted fact that "On July 3, 2007, [the Defendant] executed a real property loan agreement and escrow instructions as "trustee" of the Trust under the terms of which Lone Oak Fund, LLC made a loan of $1,500,000.00 to Peter as "trustee" of the Trust. (the [sic] "Loan")." (Pre-Trial Order 2: 24-27). The Defendant testified at trail that while he knew that he was not the trustee of the Trust at the time he signed the loan agreement, but because Richard Kvassay told the Defendant that his signature was required because of "a snag" he signed the documents as trustee. The Defendant further testified that he believed the Loan proceeds would be used for improvements Robert and Richard Kvassay wanted to make to real property owned by the Trust. Ultimately, the Superior Court found that the Trust owned the $1,500,000 loan proceeds and offset the Defendant and Richard Kvassay's distributive share of the Trust by $973,520.[3] (Superior Court Tentative Statement of Decision, Exhibit No. 33, pg. 0373)

---

[2] Richard Kvassay is the brother of the Defendant and Robert Kvassay.
[3] The offset was less than $1,500,000 because an accounting provided by Richard Kvassay showed that $526,480 of the loan proceeds were used for the benefit of the Trust.

The Superior Court found that the Defendant "was a mere tool used by Richard [Kvassay]." (Superior Court Tentative Statement of Decision, Exhibit No. 33, pg. 0372). Further, the Superior Court determined that the Defendant did not take possession of the Loan proceeds, did not conceal these proceeds from Robert Kvassay and that Richard Kvassay lied to the Defendant about Robert Kvassay's knowledge and approval of the Loan. (Superior Court Tentative Statement of Decision, Exhibit No. 33, pg. 0372) The Superior Court also determined that the Loan proceeds were property of the Trust. (Superior Court Tentative Statement of Decision, Exhibit No. 33, 0372). The Superior Court and the Appellate Court further found that the Loan proceeds were used to pay an existing equity line of credit that had been obtained by Richard Kvassay and the brokers fees and that the remaining funds were transferred to Richard Kvassay's personal bank account and an entity owned and controlled by Richard Kvassay. (Remittitur of the Appellate Court, Exhibit 37, pg. 0484). The Superior Court did not find, and the Plaintiffs did not present any evidence at the trail before this Court, that the Defendant personally used any of the Loan proceeds.

III.    Whether the Debt in Nondischargeable Under 11 U.S.C. § 523(a)(4)

Under 11 U.S.C. § 523(a)(4), the discharge granted to a debtor under 11 U.S.C. § 727 does not discharge a debt for larceny. The Ninth Circuit has asserted that "a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'" *In re Ormsby*, 591 F.3d 1199, 1205 (9th Cir.2010)(quoting 4 Collier on Bankruptcy ¶ 523.10[2] (15th ed. rev. 2008)). The court may infer intent from the totality of circumstances and the behavior of a defendant. *Id*. at 1206. Notably, "exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor." *In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992).

The Defendant has admitted in the Pre-Trial Order and his testimony at trial, that while he knew at the time he was no longer the trustee of the Trust, he executed

-4-

documents as the trustee of the Trust that encumbered Trust property in order to obtain the Loan. Further, the Superior Court found that the Loan proceeds were property of the Trust and also found that the Trust did not receive a significant portion of the Loan proceeds. Accordingly, by obtaining the Loan proceeds and not delivering the Loan proceeds to the Trust the Defendant committed the felonious taking of another's personal property.

Having determined that there was a felonious taking committed by the Defendant, the Court must next determine whether the Defendant took the Loan proceeds with the intent to convert it or deprive the owner of the same. Notably, there is no evidence before the Court that the Defendant used any of the Loan proceeds for his own use. Further, the evidence shows that the Defendant did not instigate the taking of the property but was rather asked to sign the Loan documents by Richard Kvassay. The fact that the Defendant was not the instigator of the taking of property from the Trust was demonstrated not only by the Defendant's testimony but also by the findings of the Superior Court which concluded that the Defendant was used as a tool by Richard Kvassay to obtain the Loan. Further, the Defendant testified at trial that he believed the funds were going to be used to make improvements to real property owned by the Trust.

These circumstances distinguish the facts of this case from the circumstances presented in *In re Ormsby*, 591 F.3d 1199, 1205 (9th Cir.2010). In *Ormsby*, when deciding whether the debtor had the requisite intent necessary to constitute larceny under 11 U.S.C. § 523(a)(4), the court found that the defendant actively influenced and encouraged an individual to wrongfully take the property of another. *In re Ormsby*, 591 F.3d 1199 at 1206. Further, in *Ormsby*, the debtor directly benefited from the wrongful taking he encouraged because he wanted the property for the benefit of his company. *Id*. In contrast, the evidence before the Court in this case, demonstrates that the Defendant did not instigate the taking of the Property but rather that Richard Kvassay was the person who sought to obtain the Loan. Further, the Defendant did not receive the Loan proceeds and the majority of the Loan proceeds were transferred to Richard Kvassay. While, the Defendant

acted wrongfully by holding himself out as the trustee of the Trust to obtain the Loan, this wrongful act does not by itself establish that the Defendant intended to deprive the Trust of the Loan proceeds. Ultimately, the circumstances demonstrate that the Defendant was used by Richard Kvassay so that Richard Kvassay could obtain the Loan proceeds. Further, as there were many improvements made to the real property owned by the Trust it is plausible that the Debtor believed the Loan proceeds were being used to make improvements to real property owned by the Trust as he testified. Ultimately, the Court must strictly construe the larceny exception to discharge against an objecting creditor and in favor of the debtor and the circumstances of this case do not suggest that the Defendant intended to convert the Loan proceeds or deprive the Trust of the same.

IV.  Conclusion

The totality of the circumstances in this case does not demonstrate that the Defendant intended to convert or deprive the Trust of its property. Because the Plaintiffs were not able to make this requisite showing of intent the court cannot find that the Defendant committed larceny and that this debt is nondischargeable under 11 U.S.C. § 523(a)(4). Accordingly, the debt is discharged.

Date: October 13, 2016

Gregg W. Zive
United States Bankruptcy Judge